LCP, INC., Petitioner,

v.

DISTRICT OF COLUMBIA ALCOHOL-
IC BEVERAGE CONTROL
BOARD, Respondent.

Friendship-Tenleytown Citizens
Association, et al.,
Intervenors.

No. 84–818.

District of Columbia Court of Appeals.

Argued April 23, 1985.

Decided Oct. 29, 1985.

Rehearing Denied Nov. 15, 1985.

As Amended Dec. 4, 1985.

Stephen J. O'Brien, Washington, D.C., with whom Daniel Healey and David P. Sutton, Washington, D.C., were on the brief, for petitioner.

Lutz Alexander Prager, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Richard Lehfeldt, Washington, D.C., with whom Henry A. Hubschman, Makila James, and David Yudin, Washington, D.C., were on the brief, for intervenors.

Before PRYOR, Chief Judge, and FERREN and BELSON, Associate Judges.

PRYOR, Chief Judge:

In this case, petitioner LCP, Inc. seeks review of a final order of the District of Columbia Alcoholic Beverage Control Board (hereinafter the Board) denying its application for reissuance of a Retailer's Class C Alcoholic Beverage Control License (hereinafter ABC license), D.C.Code § 25–111(a)(7) (1984 Supp.), for the license year commencing October 1, 1983. After a hearing spanning three days, the Board on June 8, 1984 issued findings of fact and conclusions of law denying the application on the ground that the place "does not qualify as appropriate for the reissuance" of an ABC license. *See id.* § 25–115(a)(6). Petitioner now challenges this order, arguing that the statutory standard for issuance of an ABC license in § 25–115(a)(6) is unconstitutionally vague; the Board misconstrued the standard and thus acted outside the scope of its statutory authority; and several of the findings of fact issued by the Board are defective and without evidentiary support. Finding these arguments to be without merit, we affirm.

I

LCP, Inc., trading as Patton's/Friendship Station (hereinafter Patton's) is located at 4926 Wisconsin Avenue, N.W., and is surrounded on its east and west by a residential neighborhood. Business development in the area has been confined to the Wisconsin Avenue corridor, with little overflow to the surrounding side streets.

Prior to the opening of Patton's, another company held an ABC license at the same location. That license was protested, and ultimately surrendered to the Board on November 16, 1981. Thereafter, the premises remained vacant until Patton's opened on December 19, 1982.[1] After Patton's

---

1. Patton's/Friendship Station is composed of two separate establishments: Patton's on the first floor has a legal capacity of 199 persons, and Friendship Station, on the second floor, also has a legal capacity of 199 persons. The

opened, residents of the surrounding neighborhood experienced an immediate and dramatic increase in traffic, trash and noise problems, public urination, and property destruction. With the arrival of warmer weather in the spring and summer of 1983, the problems emanating from the 4900 block of Wisconsin Avenue worsened.

In August 1983, the residents of the neighborhood organized a "neighborhood watch" or "stakeout" program under which neighborhood volunteers patrolled the area of the 4900 block on assigned nights and documented in detail the nature and source of the problems they observed. Standardized forms were prepared so that stakeout participants could formally document incidents as they occurred.

The stakeouts established that the vast majority of the problems in the neighborhood came from Patton's. Indeed, the neighborhood stakeouts documented 269 individual disruptive incidents committed by patrons of Patton's, ranging from drunken or noisy behavior to property destruction.

At the regularly scheduled ANC3E meeting of September 13, 1983, the ANC took up the topic of the reissuance of the ABC license held by Patton's. Numerous area residents voiced opposition to reissuance, based on their personal observations and experiences. At the close of discussion, the ANC voted unanimously (5–0), to oppose reissuance.

Protestants presented their case against reissuance of the ABC license held by Patton's to the Board during three days of hearings. Sixty-one letters were timely filed in opposition to petitioner's license reissuance application, and four letters were filed in favor of renewal. In addition, a petition with 342 signatures in opposition to the reissuance was received into evidence by the Board. The Board also heard the testimony of the former and current D.C. Metropolitan Police Captains of the Second District, both of whom testified that Patton's was the source of the majori-

ty of the problems emanating from the 4900 block of Wisconsin Avenue. The then-acting Second District Police Captain also testified that the 4900 block of Wisconsin Avenue and its immediate vicinity receive more calls for police service than any other block in the District of Columbia. In all, the Board heard a total of 18 witnesses opposing petitioner's application, 12 of them area residents. Thirteen persons testified before the Board in support of the application.

On June 8, 1984, the Board issued a unanimous (3–0) decision denying Patton's license reissuance application on the ground that the establishment was "inappropriate, considering the character of the premises, its surroundings and the overwhelming opposition of persons residing in or owning property in the neighborhood." As a basis for this conclusion, the Board noted the following factors:

(1) *Excessive Noise:* The Board found "substantial evidence that patrons of [Patton's] generate excessive noise during the early hours of the morning when leaving the premises, including yelling, screaming, arguments, loud radios and the sound of breaking bottles and the slamming of car doors."

(2) *Litter:* Patrons of Patton's were found to "have littered the neighborhood ... [with] cans, paper cups, bottles, parking tickets and other trash" which had been thrown "onto the street and private yards in the neighborhood."

(3) *Vandalism:* The Board found several instances of "property destruction, including broken fences, car vandalism, damage to automobiles and the removal of a five (5) foot tree from the front yard of one of the citizens." The Board also cited the testimony of a neighborhood resident concerning vandalism of her car, and concluded "it is not unreasonable to find that patrons of [Patton's] were responsible for damage to the [car]."

(4) *Public Urination and Defecation:* The Board found that on several occa-

---

two establishments share a single ABC license        and a single Certificate of Occupancy.

sions neighborhood residents had "observed persons urinating in public (private property and public space) and then get in a line to enter [Patton's]." In addition, the Board noted that "a male subject defecated on the property of the Armenian Church, and proceeded to enter [Patton's]."

(5) *Illegal Parking:* The Board found "substantial evidence of record that patrons of [Patton's] park illegally on private property, block private driveways, and throw the tickets placed on their vehicles by the police to the ground and streets, or place them on other vehicles."

(6) *Patrons Leaving in Intoxicated Condition:* The Board found that "patrons of [Patton's] were observed leaving the premises by witnesses in intoxicated conditions." The Board also noted testimony by Captain Michael Canfield, former Second District Captain, Metropolitan Police Department, that "on February 19, 1983, he observed rowdy, boisterous and what appeared to be intoxicated persons in [Patton's] premises."

(7) *Removal of Alcoholic Beverages from Premises:* The Board found "substantial evidence of record that alcoholic beverages are removed from [Patton's] by its patrons in violation of Section 25–111 of the D.C.Code, 1981 Edition." In support of this finding, the Board noted that "[i]n addition to Captain Canfield's direct observation that patrons of Patton's exited the premises with alcoholic beverages, citizens retrieved numerous plastic cups with the establishment's name printed on them from around the neighborhood."

(8) *Failure to Provide Adequate Parking Facilities:* The Board found that Patton's "has not provided adequate parking facilities for its patrons," with the result that "patrons of Patton's and other establishments in the 4900 block of Wisconsin Avenue ... park illegally on the parking lots of other businesses in the area and park illegally so as to obstruct private driveways, etc., in the neighborhood."

(9) *Defective Public Hall License:* The Board cited the testimony of Stephen McCarthy, Chief, Zoning Inspection Branch, Department of Consumer and Regulatory Affairs, that Patton's "public hall license had been issued in error," and "that it was physically impossible for the establishment to comply with the parking requirements applicable to public hall licenses, and that his office had taken steps to revoke the establishment's public hall license."

(10) *Advisory Neighborhood Commission Opposition:* The Board gave great weight to the opposition of the ANC to reissuance of the license.

Concluding that Patton's "does not qualify as appropriate for the reissuance" of an ABC license, the Board ordered the establishment's license surrendered to the Alcoholic Beverage Control Division by June 22, 1984. This appeal followed.

## II

■ Petitioner's first claim on appeal is that the statutory standard governing issuance of ABC licenses in D.C.Code 25–115(a)(6) (1984 Supp.) is unconstitutionally vague. This standard provides that before a license is issued the Board shall satisfy itself:

That the place for which the license is to be issued is an appropriate one considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired.

*Id.* Petitioner argues that because of its general terms, this standard "results in a denial of due process of law as applied by the Board to the facts of this case, unimplemented by any regulatory guidelines sufficient to convey fair notice of its scope." We disagree.

The statute challenged by petitioner in this case regulates commercial conduct only, and does not implicate First Amend-

ment considerations. Consequently, petitioner's vagueness challenge can succeed

only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnote omitted). Our inquiry here is limited, therefore, to a determination of whether the statutory standard in D.C. Code § 25–115(a)(6) is impermissibly vague as applied to petitioner under the facts of this case. *See United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1974) ("vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand").[2]

In a due process vagueness challenge, the inquiry is whether the statute provides "explicit standards so that the law gives 'the person of ordinary intelligence a reasonable opportunity to know what is prohibited,' and prevents 'arbitrary and discriminatory applications.'" *Nova University v. Educational Institution Licensure Commission*, 483 A.2d 1172, 1188 (D.C. 1984) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972)), *cert. denied*, —— U.S. ——, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985). In making this determination, the constitutional sufficiency of a statute's terms "cannot be judged in a vacuum." *Id.* at 1189. Instead,

[t]he context must be considered because the context not only gives concreteness to what seems abstract, but it also demonstrates that despite its generality, a broad standard may be all that sensibly may be expected if the [agency] is to be equal to the sundry situations that may arise.

*Id.* (citation omitted). Moreover, the tests of vagueness are not to be "mechanically applied." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., supra,* 455 U.S. at 498, 102 S.Ct. at 1193. Rather, "[t]he degree of vagueness that the constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Id.* In particular,

economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.

\*     \*     \*     \*     \*     \*

Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

*Id.* at 498–99, 102 S.Ct. at 1193–94 (footnotes omitted).

Given this framework of analysis, petitioner's claim that the standard in D.C. Code § 25–115(a)(6) is unconstitutionally vague as applied in this case fails. The statutory standard under challenge here provides criteria for the issuance of retail ABC licenses. This regulatory context—the licensure of establishments serving alcohol—gives "concreteness" to the general terms of the statute. While the term "appropriate" may be lacking in definition when viewed in the abstract, petitioner can hardly claim that the statutory standard did not give him "a reasonable opportunity to know" that factors such as noise, litter, vandalism, public urination and defecation,

---

**2.** Thus, we do not consider the facial vagueness of the challenged statute; that is, whether it

would be vague in hypothetical situations not presented here.

parking, removal of alcoholic beverages, and neighborhood opposition would be considered in determining whether his establishment was an "appropriate" place for issuance of a liquor license. *Cf. Ron's Last Chance v. Liquor Control Commission,* 124 Mich.App. 179, 182–83, 333 N.W.2d 502, 504 (1983) (statute prohibiting "solicitation for immoral purposes" is not facially vague because "person of ordinary intelligence would reasonably believe" it is intended to prohibit solicitation for prostitution).

Moreover, as an enterprise subject to commercial regulation, petitioner had the "ability to clarify the meaning of the regulation by its own inquiry...." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., supra,* 455 U.S. at 498, 102 S.Ct. at 1193. While no regulations amplifying the statutory standard have been promulgated, numerous judicial and administrative interpretations have elaborated its text.[3] *See A.J.C. Enterprises, Inc. v. Pastore,* —— R.I. ——, ——, 473 A.2d 269, 274 (1984) (vague legislative standards may be saved if the needed specificity has been supplied by judicial interpretation). A review of these interpretations reveals that virtually all of the factors relied upon by the Board in denying petitioner's application for reissuance of the ABC license held by Patton's had previously been articulated as indicia of "appropriateness" under the statutory standard. *E.g.,* noise: *Georgia Avenue Tavern, Inc.,* No. 9310–8384P (July 20, 1983); *Liquor Shop, Inc.,* No. 6424–7494P (November 6, 1979); litter: *Muir v. District of Columbia Alcoholic Beverage Control Board,* 450 A.2d 412, 413 (D.C.1982) (per curiam); *Citizens Association of Georgetown, Inc. v. District of Columbia Alcoholic Beverage Control Board,* 323 A.2d 715, 716 (D.C.1974); van-

dalism—crimes emanating from establishment: *Paragon Too, Inc.,* No. 9134–8366P (March 25, 1983); *Phil Redfearn & Haywood Williams, III,* No. 11657–8403P (November 10, 1982); parking: *Le Jimmy, Inc. v. District of Columbia Alcoholic Beverage Control Board,* 433 A.2d 1090, 1093 (D.C.1981); *Citizens Association of Georgetown v. District of Columbia Alcoholic Beverage Control Board,* 410 A.2d 197, 200–01 (D.C.1979); *Leonard T. Majors,* No. 11833–8081P (Nov. 10, 1980); patrons leaving in intoxicated condition: *Phil Redfearn & Haywood Williams, III, supra; Family Liquor Corporation,* No. 1747–8275P (March 24, 1982).[4]

Together, the regulatory context and judicial and administrative interpretations of D.C.Code § 25–115(a)(6) gave petitioner "fair warning of what is proscribed" under the statutory standard. *Hoffman Estates v. Flipside, Hoffman Estates, Inc., supra,* 455 U.S. at 503, 102 S.Ct. at 1195–96. Consequently, we reject petitioner's claim that the statute is unconstitutionally vague as applied under the facts of this case.

### III

■ Next, petitioner challenges the Board's reliance on instances of disorderly conduct occurring outside Patton's in concluding that the establishment was not an "appropriate" place for reissuance of its liquor license under D.C.Code § 25–115(a)(6). Petitioner argues that "under a fair construction of the appropriateness criteria relied on by the Board," the conduct of patrons of Patton's "proceeding to, and sometimes departing from, [the] establishment," do not fall within the terms of the statute. Consequently, petitioner asserts "there is simply no rational basis or evidentiary support for the Board's conclusion

---

3. We note that in acting upon applications such as that at issue here, the Board may proceed either by regulation or case-by-case adjudication. *Hicks v. Physical Therapists Examining Bd.,* 221 A.2d 712, 715 (D.C.1966) (citing *Securities and Exchange Comm'n v. Chenery Corp.,* 332 U.S. 194, 202–03, 67 S.Ct. 1575, 1580, 91 L.Ed.

1995 (1947)), *cert. denied,* 390 U.S. 987, 88 S.Ct. 1181, 23 L.Ed.2d 1289 (1948).

4. Another factor noted by the Board, removal of alcoholic beverages from the premises, constitutes a violation of D.C.Code § 25–111(a)(7) (1984 Supp.).

that petitioner's establishment is not an 'appropriate' place." We disagree.

It is axiomatic that "the words of [a] statute should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Davis v. United States*, 397 A.2d 951, 956 (D.C. 1979); *see Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983). Here, the statute provides that before a license is issued the Board shall satisfy itself, "[t]hat the place ... is an appropriate one considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood."

Petitioner would have us construe this statutory provision as referring only to the physical characteristics of the establishment and its immediate surroundings. However, the statute requires that the Board consider not only the "character of the premises," but also, more generally, the appropriateness of the "place" and the "wishes of the persons residing or owning property in the neighborhood...." In our view, this language provides ample statutory support for the Board's consideration of problems emanating from Patton's, or traceable to patrons outside the establishment, in determining whether the place is "appropriate" for reissuance of an ABC license. *Cf. Muir v. District of Columbia Alcoholic Beverage Control Board, supra*, 450 A.2d at 412 (affirming Board's denial of license application based, in part, on finding that "the license would have an adverse effect on the neighborhood"); *Citizens Association of Georgetown v. Simonson*, 131 U.S.App.D.C. 152, 153, 403 F.2d 175, 176 (1968) (per curiam) (noting that Congress, by directing the Board to consider wishes of persons residing or owning property in the neighborhood in issuing licenses, has recognized that operation of establishment may trouble its neighbors), *cert. denied*, 394 U.S. 975, 89 S.Ct. 1454, 22 L.Ed.2d 775 (1969); *The Edge—January, Inc. v. Pastore*, — R.I. —, —, 430 A.2d 1063, 1066 (1981) (direct causational link to

establishment is created when it can be reasonably inferred that the disorderly incidents occurred just outside a licensee's premises and had their genesis within).

## IV

Finally, petitioner argues that this case should be remanded to the Board because "[e]xamination of the record ... discloses numerous findings of fact unsupported by substantial evidence." While it appears that two of the Board's findings in this case may indeed have been defective, we find remand to be unwarranted.

■ In reviewing findings of the Board, we apply the "substantial evidence test." District of Columbia Administrative Procedure Act (DCAPA), D.C.Code § 1–1509(e) (1981). To be sufficient to support a finding, evidence must be "more than a mere scintilla [and must be] such evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *see also Vestry of Grace Parish v. District of Columbia Alcoholic Beverage Control Board*, 366 A.2d 1110, 1112 (D.C.1976).

■ Significantly, however, this court "may invoke the rule of prejudicial error" in reviewing administrative decisions. D.C. Code § 1–1510(b) (1981); *see Arthur v. District of Columbia Nurses' Examining Board*, 459 A.2d 141, 146 (D.C.1983); *Liberty v. District of Columbia Police and Firemen's Retirement and Relief Board*, 410 A.2d 191, 194 (D.C.1979). Under this rule, "reversal and remand is required only if substantial doubt exists whether the agency would have made the same ultimate finding with the error removed." *Arthur v. District of Columbia Nurses' Examining Board, supra*, 459 A.2d at 146; *Braniff Airways, Inc. v. Civil Aeronautics Board*, 126 U.S.App.D.C. 399, 412, 379 F.2d 453, 466 (1967). When the adequacy of findings is challenged, we will not reverse if the findings, even if found erroneous, are "demonstrably subsidiary...." *Liberty v. District of Columbia Police*

*and Firemen's Retirement and Relief Board, supra,* 410 A.2d at 194 (quoting *Braniff Airways, Inc. v. Civil Aeronautics Board, supra,* 126 U.S.App.D.C. at 412, 379 F.2d at 466).

In this case, the Board was presented with abundant evidence on the adverse impact of Patton's on its neighboring community. Residents of the area carefully documented and presented to the Board reports of 269 individual disruptive incidents committed by patrons of Patton's. Photographs were also submitted which graphically substantiated claims of property destruction, litter, vandalism, and public urination. Eighteen witnesses presented testimony concerning problems emanating from Patton's, and 61 letters and a petition containing 342 signatures were submitted in opposition to renewal of the establishment's license.

Based on this evidence, the Board concluded "[t]hat the premises does not qualify as appropriate for the reissuance" of an ABC license. As noted above, the Board based this conclusion on findings of excessive noise, litter, vandalism, public urination and defecation, illegal parking, patrons leaving in intoxicated condition, removal of alcoholic beverages from the premises, inadequate parking, defective public hall license, and neighborhood opposition.

Petitioner asserts that several of the Board's findings are not supported by substantial evidence or are otherwise defective. In particular, petitioner challenges as fatally flawed the Board's findings concerning the adequacy of parking, the status of Patton's public hall license, the adequacy of plumbing at the establishment, vandalism, intoxicated persons leaving the premises, and the removal of alcoholic beverages from Patton's.[5]

■ Having reviewed petitioner's claims of error, we find those relating to the adequacy of parking,[6] vandalism,[7] and plumbing facilities,[8] to be without merit. In contrast, petitioner's claims relating to the status of Patton's public hall license,[9] and persons leaving the premises intoxicated,[10] find support in the record.

5. Petitioner does not challenge the Board's findings as to noise, litter, public urination and defecation, illegal parking, and opposition of neighborhood residents.

6. Petitioner challenges the Board's finding that "it had not provided adequate [parking] facilities for its patrons." Petitioner's argument, however, concerns the implementation of a prior agreement with the community on parking, and cites no evidence presented to the Board that adequate parking facilities for patrons of Patton's had been, or could be, found in the neighborhood. In light of the ample evidence before the Board concerning problems associated with parking, we conclude that substantial evidence supported the Board's finding that parking facilities at the establishment were inadequate.

7. Petitioner objects on the grounds of prejudice to the Board's finding that "[i]t is not unreasonable to find that patrons of [Patton's] were responsible" for vandalism of a car owned by a neighborhood resident. Notwithstanding petitioner's objection to this finding on appeal, the witness presenting testimony concerning this episode was not cross-examined at the hearing before the Board. Thus, the evidence before the Board on this episode was undisputed, and the Board was within its authority in crediting it.

*See Woodley Park Community Ass'n v. D.C. Bd. of Zoning Adjustment,* 490 A.2d 628, 641 (D.C. 1985).

8. Petitioner objects to the Board's finding that "[p]lumbing facilities for the licensed premises appear to be inadequate for the number of patrons attracted to the premises considering the number of urinals and their location." Petitioner objects to this finding because plumbing facilities at Patton's were in compliance with applicable zoning regulations, and thus, in its view, were "indeed adequate." That Patton's was in compliance with the plumbing code, however, does not undercut the Board's finding that plumbing facilities were inadequate to render the establishment "appropriate" for reissuance of an ABC license.

9. Concerning the public hall license, it appears that the Board incorrectly found that Stephen McCarthy, Chief, Zoning Inspection Branch, testified that Patton's "public hall license had been issued in error," and "that it was physically impossible for the establishment to comply with the parking requirements applicable to the issuance of Public Hall Licenses."

10. In its findings, the Board cited the testimony of Captain Michael Canfield that he observed

Given the ample evidence before the Board, and the numerous findings supporting the Board's conclusion that Patton's was an "inappropriate" place for issuance of an ABC license, it is clear that the defective findings noted by petitioner are "demonstrably subsidiary," *Liberty v. District of Columbia Police and Firemen's Retirement and Relief Board, supra,* 410 A.2d at 194, and that no "substantial doubt exists" that the Board "would have made the same ultimate finding with the error[s] removed." *Arthur v. District of Columbia Nurses' Examining Board, supra,* 459 A.2d at 146. Consequently, we find no basis for remanding this case to the Board. Accordingly, the order on review is

*Affirmed.*

"rowdy, boisterous and what appeared to be intoxicated persons in the Applicant's premises," and directly observed patrons of Patton's exiting the premises with alcoholic beverages. Petitioner correctly notes that Captain Canfield's statements regarding the removal of alcoholic beverages were not based on his direct observation, but on a police report that constituted hearsay. Significantly, however, independent evidence cited by the Board—plastic beer cups collected from the neighborhood bearing the name of Patton's—also supported this finding.