Ronald BYRD, Appellant,

v.

UNITED STATES, Appellee.

No. 88–969.

District of Columbia Court of Appeals.

Submitted Jan. 11, 1990.

Decided Aug. 31, 1990.

Jane Carol Norman, Washington, D.C., appointed by this court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty., John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before ROGERS, Chief Judge, and NEWMAN and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

Appellant Ronald Byrd was convicted by a jury of possession of narcotics paraphernalia under D.C. Code § 33–550 (1981),[1] and on appeal he contends that the trial judge erred in denying his motion to suppress. D.C.Code § 33–550 requires intent to use a controlled substance by "subcutaneous injection,"[2] and has been invoked only where there is possession of a hypodermic needle or syringe. *See United States v. Covington,* 459 A.2d 1067 (D.C.1983). Here the government proved only that appellant had a smoking pipe. Consequently, the court, *sua sponte,* directed the parties to address whether appellant was charged under the correct statute.[3] *See Clemons v. United States,* 400 A.2d 1048, 1051 (D.C.1979) ("Courts generally ... dismiss challenges based on technical inaccuracies or omissions, if the indictment adequately informs the defendant of pending charges."). In response, the government concedes that appellant was erroneously charged under § 33–550, but maintains that this error should have no effect on the disposition of this appeal. Under Super.Ct.Crim.R. 7(e) (1989), the information could have been amended "at any time before verdict or finding if no additional or different offense is charged," to charge appellant under D.C. Code § 33–603(a).[4] Further, the record of

---

1. D.C.Code § 33–550 (1988 Repl.) provides:
 Whoever, except for a physician, dentist, chiropodist, or veterinarian licensed in the District of Columbia or a state, registered nurse, registered embalmer, manufacturer or dealer in embalming supplies, wholesale druggist, industrial user, official or any government having possession of the proscribed articles by reason of his or her official duties, nurse or medical laboratory technician acting under the direction of a physician or dentist, employees of a hospital or medical facility acting under the direction of its superintendent or officer in immediate charge, person engaged in chemical, clinical, pharmaceutical or other scientific research, acting in the course of their professional duties, has in his or her possession a hypodermic needle, hypodermic syringe, or other instrument that has on or in it any quantity (including a trace) of a controlled substance with intent to use it for

administration of a controlled substance by subcutaneous injection in a human being shall be fined not more than $500 or imprisoned for not more than 1 year, or both.

2. Subcutaneous is defined as "situated or lying under the skin, as trace; performed or introduced under the skin, as an injection by a syringe." THE RANDOM HOUSE COLLEGE DICTIONARY 1307 (1980 rev.ed.)

3. By order dated January 24, 1990, the court directed the parties to brief the question of "whether or not possession of a pipe ... constituted a violation of a provision of the D.C. criminal code."

4. D.C.Code § 33–603(a) (1988 Repl.) provides:
 It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest,

appellant's defense, that he did not "knowingly" possess the drug pipe makes clear, according to the government, that appellant understood that he was charged with possession of drug paraphernalia. Finally, the jury instructions required the jury to find facts that satisfied the elements of § 33–603(a). Appellant's response is that the essential elements of the two offenses are different and that he had no notice of the charges against him. We conclude that the variance between allegation and proof was not fatal, and accordingly, we affirm.

## I

 An indictment, or other charging instrument, serves three vital constitutional functions. First, it insures that the accused is apprised of the charges so as to be able to adequately prepare a defense. Second, it describes the crime with sufficient specificity to protect the accused against future jeopardy for the same offense. *Gaither v. United States*, 134 U.S.App. D.C. 154, 159, 413 F.2d 1061, 1066 (1969); *see United States v. Miller*, 471 U.S. 130, 135, 105 S.Ct. 1811, 1814–15, 85 L.Ed.2d 99 (1985). Third, it "protects against oppressive actions of the prosecutor or a court, who may alter the charge to fit the proof." *Scutchings v. United States*, 509 A.2d 634, 636 (D.C.1986) (referring to the Fifth Amendment guarantee regarding indictments) (citing *Gaither, supra,* 134 U.S. App.D.C. at 159, 413 F.2d at 1061).

The information charging appellant with violation of D.C.Code § 33–550 reads:

POSSESSION OF DRUG PARAPHERNALIA—in that he unlawfully had in his possession a pipe, which contained a

quantity of a controlled substance with intent to use said pipe, for the administration of a controlled substance by subcutaneous injection in a human being, in violation of 33 District of Columbia [Code], Section 550.

The docket sheet in the case file identified count A of the information as charging possession of cocaine and count B as charging possession of drug paraphernalia—a pipe.[5] The trial transcript indicates that the government and appellant proceeded on the basis that appellant was charged with illegal possession of drug paraphernalia to wit: a pipe used for ingesting cocaine. Appellant denied that the jacket in which the pipe was found was his, that he had knowledge of the drug paraphernalia, and that he knowingly possessed any drugs or drug paraphernalia. The prosecutor's cross-examination focused on appellant's possession of the drug pipe, which he admitted was found in the jacket that he was wearing, but protested that his fingerprints would not be found on the pipe.

 Thus, the information charged appellant with illegal possession of drug paraphernalia that could be administered subcutaneously, under § 33–550, while the government proved that appellant possessed a pipe used to ingest drugs into the body, an offense under § 33–603(a).[6] A variance between allegation and proof is not fatal, however, unless the defendant has been deprived of an adequate opportunity to prepare a defense or has been exposed to the risk of being prosecuted for the same two offenses. *See Ingram v. United States*, 392 A.2d 505, 507 (D.C.

manufacture, compound, convert, produce, process, prepare, test, analyze, pack or repack, store, contain, conceal, inhale, ingest, or otherwise introduce into the human body a controlled substance.

5. The jury acquitted appellant of possession of cocaine.

6. An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment

are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment.

*Gaither, supra,* 134 U.S.App.D.C. at 164, 413 F.2d at 1071 (emphasis in original) *quoted in Scutchings, supra,* 509 A.2d at 636. *See, e.g., Stirone v. United States*, 361 U.S. 212, 217–219, 80 S.Ct. 270, 273–274, 4 L.Ed.2d 252 (1960) (reversed conviction, defendant was indicted for violating the Hobbs Act by interfering with the victim's shipment of sand, but the government was permitted to introduce evidence of interference with steel shipments, and the jury instructed that the defendant could be convicted of either offense.).

1978); *Jackson v. United States*, 123 U.S. App.D.C. 276, 280, 359 F.2d 260, 264, *cert. denied*, 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966).[7] We find no evidence that appellant was harmed by the variance, and he has not suggested that his defense would have changed in any respect.

█ The instructions required the jury to find all of the elements of § 33–603(a).[8] See note 4, *supra*. Section 33–603 uses the generic term "drug paraphernalia," while the jury instruction referred to the "unlawful possession of a pipe." This is not a material difference between the statute and instruction as would require the reversal of appellant's conviction. The word "pipes" is included in the statutory definition of "drug paraphernalia" under § 33–601(3)(L)(i). *See Minor v. United States*, 475 A.2d 414, 416 (D.C.1984) (failure to object to the inadequacy of the jury instructions does not mitigate error where effect of instruction was to remove critical issue from jury's consideration). Furthermore, we view the reference in § 33–603(a) to "inhale, ingest or otherwise introduce into the body," as only a semantic, not substantive difference from reference in the jury instruction "for the administration of a controlled substance, in this case, cocaine." Thus, despite these slight variations, the instructions presented the jury with a correct statement of the law to convict under D.C.Code § 33–603(a). *See Kind v. United States*, 529 A.2d 294, 295 (D.C.1987) (reversible error not to instruct jury on an essential element).

█ Where there has been, as here, no more than a miscitation of a statute, reversal of a conviction is required only if the defendant is prejudiced. In *Price v. United States*, 429 A.2d 514, 515 (D.C.1981), the court held that the defendant was not prejudiced by a miscitation in the information

because "he was apprised of the charge against him although it derived from a different statutory provision." *Id.* (citing *Wittenberg v. United States*, 366 A.2d 128 (D.C.1976); Super. Ct. Crim. R. 7(c)). *See Belton et al. v. United States*, Nos. 88–446, –573, –773 (circulated to all judges July 30, 1990) (miscitation to statute in fifth count of indictment not prejudicial because facts stated in that count coupled with reference to another statute gave defendants "clear notice" or charge); *Scutchings, supra*, 509 A.2d at 639 (indictment not fatally defective where it charged the defendant with violating a repealed statute since the new statute also proscribed the defendant's conduct). Appellant has not suggested that he was prejudiced in any way as a result of the miscitation in the information. The record clearly shows that he was apprised that he was charged with possession of drug paraphernalia. Count B of the information, as shown in the docket sheet, charged possession of drug paraphernalia—a pipe. *See Giles v. United States, supra*, 472 A.2d at 884 (no error to disregard words in the fifth count of indictment where the essential and material charging terms appeared in the fourth count and put appellant on notice of crime charged); *Price v. United States, supra*, 429 A.2d at 515 (no prejudice because appellant apprised of charges against him); *Wittenberg v. United States, supra*, 366 A.2d at 132 (information mistakenly charged felony embezzlement where proof supported appellant's conviction of misdemeanor embezzlement). *See also United States v. Bush*, 212 U.S.App.D.C. 117, 659 F.2d 163 (1981) (no prejudice where the indictment listed wrong form numbers); *United States v. Fruchtman*, 421 F.2d 1019 (6th Cir.1970) (technical change in citation of statute). Accordingly, we hold that appellant has failed to demonstrate

---

7. *Scutchings, supra*, 509 A.2d at 637 (variance becomes a constructive amendment when "facts introduced at trial go to an essential element of the offense charged, and the facts are different from the facts that would support the offense charged in the indictment.") (quoting *Giles v. United States*, 472 A.2d 881, 883 (D.C.1984)).

8. The judge instructed the jury in pertinent part:

In regard to possession of drug paraphernalia, the Government must prove beyond a reasonable doubt that the Defendant unlawfully had in his possession a pipe which contained a quantity of a controlled substance, with intent to use the pipe for the administration of a controlled substance, in this case, cocaine.

prejudice necessary for his conviction to be vacated on the basis of the miscitation in the information.

## II

■ Appellant's claim of error, prior to our *sua sponte* order, related to the denial of his motion to suppress the drug pipe. Under the totality of circumstances, we hold that the trial judge could properly find that the police had reasonable grounds to order appellant out of car and to frisk him upon seeing a bulge in appellant's pocket that was thought by the police officer possibly to be a gun.[9] *Jones v. United States,* 544 A.2d 1250, 1251 (D.C.1988); *see Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1967) (*per curiam*) (driver of car); *Marbury v. United States,* 540 A.2d 114, 116 (D.C.1985). Upon feeling an object that "was round or cylinder-like, and ... had stems," which the officer thought was a [drug] smoking pipe," there was, in view of the drugs and pipe previously found in the car and the drug-mixing test tube noted hanging from appellant's pocket, probable cause for appellant's arrest. *United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 471–72, 38 L.Ed.2d 427 (1973); *In re E.G.,* 482 A.2d 1243, 1246 n. 3 (D.C.1984) (" '[e]ven if the formal arrest was not made until after the search, the search will be upheld so long as there is probable cause for an arrest before the search is begun' " (citation omitted)).

Accordingly, the judgment is affirmed.

**9.** The government's evidence showed that on February 8, 1988, at 1:45 a.m., appellant was sitting in the rear of a vehicle stopped by the police for a defective left tail light. The driver was arrested for failing to produce a District of Columbia operator's permit. One of the officers saw a passenger, a man named Robinson, in the front seat, drop or lay an object on the floorboard and throw an object onto the rear seat. The police ordered Robinson out of the car and discovered two packets of cocaine on the floorboard and a cigarette case containing a smoking pipe on the rear seat. The officers returned to the car to make a complete search. As one of the officers opened the door to escort appellant from the rear seat, he noticed a large bulge on the right side of appellant's jacket which he thought was "a gun or something." The officer also saw a test tube protruding from the jacket pocket. The officer told appellant to put his hands up and, upon frisking the outside of the pocket, felt a hard, cylinder-like object with a stem which he thought was a drug smoking pipe, in view of the drugs and pipe already recovered from the car. The officer removed that hard object, which was a glass pipe, "a little makeshift pipe that has the stems that you can inhale from ..., and put your drugs ... in at the top." Five packets of cocaine were found in a pocket of the jacket appellant was wearing.