**Gregory MITCHELL, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 96–CT–868.**

District of Columbia Court of Appeals.

Argued Oct. 7, 1998.
Decided Dec. 16, 1999.

---

Ralph M. Randazzo, Washington, DC, appointed by the court, for appellant.

Sidney Bixler, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, Robert R. Rigsby, Deputy Corporation Counsel, Rosalyn Calbert Groce, Director, Policy and Appeals Branch, and Bernard Siler, Assistant Corporation Counsel, were on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN and REID, Associate Judges.

WAGNER, Chief Judge.

Appellant, Gregory Mitchell, was charged by information with violation of D.C.Code § 1–1312(j)(1) (1999), a statute governing nominations of candidates for local office by petition, "for which a penalty is provided in D.C.Code § 1–1312(b)(3)." Specifically, the information charged that Mitchell, "being a circulator, willfully submitted a nominating petition that contained signatures that were not written by the persons whose signatures they purported to be." Following a jury trial, Mitchell was convicted as charged. He argues, for the first time on appeal, that the offense for which he was convicted was not a crime under the statute cited. Mitchell further contends that the court's instruction to the jury on the elements of the offense was based on an unrelated statute and uncharged crime. We agree and reverse for plain error.

## I.

The evidence showed that Mitchell's signature appeared as a circulator on a nomination petition for a candidate for chairperson of the District of Columbia Council. There were twenty signatures on the petition purporting to be those of registered voters. Cynthia White, a handwriting expert, testified that one person signed all twenty of the names of registered voters appearing on the petition signed by Mitchell. Ms. Leona Agourides, an employee of the Board of Elections and Ethics, testified that, without the twenty signatures on

this petition, the candidate would have had only 2985 of the 3000 signatures required for his nomination. She also testified concerning the requirements for completion of the nominating petition. Ms. Agourides testified that a circulator must sign an affidavit. Mitchell signed the affidavit swearing or affirming as follows:

> (a) that I am a registered qualified elector of the District of Columbia;
>
> (b) that I personally circulated this petition sheet;
>
> (c) that I personally witnessed the signing of each signature thereon; and
>
> (d) that I have determined from each signer that he or she is a duly registered voter in the District of Columbia. . . .

Two registered voters testified that although their names appeared on the petition, they had not signed it.

Mitchell testified that the candidate came to his office and requested volunteers to circulate a nominating petition on his behalf for which he promised to pay the circulator one dollar for each signature obtained. According to Mitchell, he took four petitions, signed each one, and placed them in his drawer. Mitchell said that he did not return to his office for several days, and when he did, only three petitions remained in his drawer.

The trial court instructed the jury that Mitchell was charged with corrupt election practice and that

> The essential elements of this corrupt election practice that the Government must prove beyond a reasonable doubt are that within the District of Columbia, that the defendant was a circulator, and that does not appear to be in dispute, that he willfully submitted a petition for the nomination of a candidate for a city council seat containing signatures made by persons other than the persons whose name was signed.
>
> And a circulator is a person, as we heard, designed to obtain signatures on a petition for an election. And the regu-

lations of the Election Board require that a signature on a petition shall be made by the person whose signature it purports to be and not by any other person.

The trial court also defined for the jury the term wilful as used in the instructions. During discussions of proposed instructions with counsel, the trial court stated that Mitchell was not charged with false statements, or lying on the form, and an instruction which might have related to such a charge was withdrawn by defense counsel.

## II.

Mitchell argues that the government failed to prove that he violated the provisions of the statute under which he was charged, D .C.Code §§ 1–1312(b)(3) and – 1312(j)(1). In related arguments, he contends: (1) that the trial court's instruction on the elements of the offense of corrupt practices was derived from other sections of the D.C.Code, specifically, D.C.Code §§ 1–1318 and –1320, which do not apply to a circulator; and (2) that regulations of the D.C. Board of Elections can not be used to create a crime. Preliminarily, the government argues that Mitchell's arguments are raised for the first time on appeal, and therefore, this court should decline to consider them.

■■■ Mitchell did not raise these arguments in the trial court. Although he made motions for judgment of acquittal, challenging the evidentiary sufficiency of the government's proof at the end of the government's case and at the conclusion of all the evidence, he did not advance the specific arguments he now raises. Unless a party fairly apprises the trial court of the theory advanced or question presented with some precision, such questions will generally be spurned on appeal.[1] See Salmon v. United States, 719 A.2d 949, 953 (D.C.1997). Insofar as Mitchell makes an instructional challenge, timely objections are required by court rule. See Super. Ct.Crim. R. 30. Rule 30 provides that "[n]o· party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly ·the matter to which that party objects and the grounds of the objection." A claim of error in an instruction not raised timely is subject to plain error review. See Morris v. United States, 469 A.2d 432, 438 (D.C.1983). Similarly, issues not raised in the trial court will be reviewed on appeal only for plain error. See Nixon v. United States, 728 A.2d 582, 587 (D.C.1999) (citing Super. Ct.Crim. R. 52(b)); Salmon, 719 A.2d at 953 (citing Foote v. United States, 670 A.2d 366, 369 (D.C.1996)). "In order to satisfy this exacting standard, the defendant must demon-·strate both that the error was 'plain' in the sense of 'clear' or 'obvious,' and that the challenged ruling undermined the fairness, integrity, or public reputation of the proceedings and resulted in a clear miscarriage of justice." Nixon, 728 A.2d at 587 (citing Johnson v. United States, 520 U.S. 461, 465–70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). Since Mitchell did not raise the arguments he makes on appeal in the trial court, we review for plain error.

■■■ Essentially, Mitchell argues that his conviction is based on conduct which the statute does not make a crime and which the regulation relied upon by the District cannot make a crime. If Mitchell can make this showing, he can meet the plain error standard for reversal. See Byrd v. United States, 579 A.2d 725, 728 (D.C.1990) (material difference between statute and instruction would require reversal of conviction); see also Spade v. United States, 277 A.2d 654, 656–57 (D.C. 1971) (conviction reversed for plain error where incorrect element inserted in instruction and unclear which of two contradictory instructions jury followed to judgment). It would be both an obvious error

---

1. But see Kalorama Heights Ltd. Partnership v. District of Columbia Dep't of Consumer & Regulatory Affairs, 655 A.2d 865, 873 n. 11 (D.C.1995) (Although due process vagueness challenge arguably waived, court considered the issue where the record was adequate and the parties joined the issue.).

and a miscarriage of justice for a defendant to stand convicted of an offense which the law does not make a crime.

 Mitchell contends that his conduct was not proscribed by D.C.Code § 1–1312(j)(1) under which he was charged.[2]

D.C.Code § 1–1312 is captioned "Qualifications of candidates and electors; nomination and election of Delegate, Mayor, Chairman, members of Council, and members of Board of Education, petition requirements, arrangement of ballot." It is a broad statute which sets forth the qualifications for candidates for these various offices, circulators of nominating petitions, and the procedures to be followed in the nominations process. The only criminal penalty provision in § 1–1312 is found in D.C.Code § 1–1312(b)(3) which provides in pertinent part as follows:

Any circulator who willfully violates any provision of this section, shall upon conviction thereof, be subject to a fine of not more that $10,000 or to imprisonment of not more than 6 months, or both. Each occurrence of a violation of this section shall constitute a separate offense.

This section limits the criminal sanction for circulators to violations of the section covered. It does not by its terms cover other sections within § 1–1312, most of which are unrelated to the responsibilities of a circulator in the nominations process.[3] Paragraph (b)(3) is preceded immediately by a provision addressing the qualifications of a circulator which reads as follows:

Only registered, qualified electors of the District of Columbia are authorized to circulate nominating petitions of candidates for elected office pursuant to this subchapter. The Board shall consider invalid the signatures on any petition sheet which was circulated by a person who, at the time of circulation, was not a registered, qualified elector of the District of Columbia.

D.C.Code § 1–1312(b)(2). It may be reasonable for paragraph (b)(3)'s penalty provision to cover violation of the circulator qualification paragraph which immediately precedes it, *i.e.*, § (b)(2); however, Mitchell was not charged with circulating a petition without meeting the qualifications of § 1–1312(b)(2). Mitchell was charged with violation of § 1–1312(j)(1). Subsection (j)(1) simply sets forth the procedure which must be followed in order for a qualified candidate for various elective offices, including Chairman of the Council, to be nominated by petition.[4] The provisions of the statute under which Mitchell was charged do not create a criminal penalty for "corrupt election practices" or for "willfully submitt[ing] a nominating petition that contained signatures that were not written by the persons whose signatures they purported to be," as charged in the information.

 The District argues that proof that Mitchell submitted a petition for a

---

**2.** There are two versions of the information dated July 21, 1995, both designated "Corrupt Election Practices." The difference between the two relates to the statutory provision cited. One version states that Mitchell violated "D.C.Code § 1–1312, for which a penalty is provided in D.C.Code § 1–1312(b)(3)"; the other charges that Mitchell violated "D.C.Code § 1–1312(j)(1)" and cites the same penalty section.

**3.** The next section, for example, provides for the manner in which the Board is to arrange the names of the candidates on the ballot. D.C.Code § 1–1312(c)(1).

**4.** D.C.Code § 1–1312(j)(1) provides in relevant part:

A duly qualified candidate for the office of ... Chairman of the Council ... may, subject to the provisions of this subsection, be nominated directly as such a candidate for election for such office (including any such election to be held to fill a vacancy). Such person shall be nominated by petition: (A) Filed with the Board not less than 69 days before the date of such general election; and (B) in the case of a person who is a candidate for the office of ... Chairman of the Council ..., signed by duly registered voters equal in number to 1–1/2 per centum of the total number of registered voters in the District, as shown by the records of the Board as of 123 days before the date of such election, or by 3,000 persons duly registered under § 1–1311, whichever is less.

candidate with forged signatures violates § 1–1312. In support of its argument, the District relies upon that portion of § 1312(j)(1) which states that members of the Council may be nominated by petition "signed by duly registered voters equal in number to … 3000 persons duly registered under § 1–1311." The flaw in the government's argument is that this section, while specifying the qualifications for voters who can sign the petition if a candidate is to be nominated for membership on the Council, imposes no obligation upon the circulator of the petition for which a criminal sanction is authorized. A criminal statute must define the conduct prohibited. *See In re J.A.*, 601 A.2d 69, 73 (D.C.1991). Penal statutes are subject to the requirement of definiteness and must be sufficiently specific to inform persons affected by its requirements of the elements of the criminal offense involved. *See Atwood's Transport Lines, Inc. v. United States*, 211 F.Supp. 168, 170 (D.D.C.1962). The language of § 1–1312(j)(1) does not convey clear warning to a circulator that he can be criminally sanctioned for conduct related to that particular section of the statute.

 The District argues that the statute is clarified by reference to regulations adopted by the Board of Elections and Ethics (Board) pursuant to D.C.Code § 1–1324. D.C.Code § 1–1324 authorizes the Board to "issue rules and regulations to effect the provisions of [the subchapter covering elections], in accordance with the District of Columbia Administrative Procedure Act (D.C.Code § 1–1501 *et seq.*)." Pursuant to § 1–1324, the Board issued regulations which provide that "[t]he signature on a petition shall be made by the

person whose signature it purports to be and not by any other person." 3 DCMR 1607.2. The regulations further provide:

> Each circulator shall swear or affirm upon oath that he or she has done the following:
> (a) Has personally circulated the petition;
> (b) Has personally witnessed the signing of each signature on the petition;
> (c) Has determined from each signer that he or she is a registered voter, in the same party as the candidate and, where applicable, that the signer is registered in and a resident of the ward from which the candidate seeks election; and
> (d) Is a registered qualified elector.

3 DCMR 1604.2. Citing *Kalorama Heights, supra* note 1, 655 A.2d at 865, the District argues that the requirements of law governing the conduct of a circulator are spelled out more clearly in these regulations and that the regulations can be used to clarify and amplify the statutory standard. In *Kalorama Heights*, we stated that "the meaning of a statute can be clarified by turning to 'regulations [that] amplify[ ] the statutory standard' and to 'judicial and administrative interpretations [that] have elaborated its text.'" *Id.* at 873 (citing *LCP, Inc. v. District of Columbia Alcoholic Beverage Control Bd.*, 499 A.2d 897, 902 (D.C.1985)).

 Here, the District contends that in a similar vein, we can look to the Board's regulations to define the conduct which is criminal under the statute. We disagree. The nature of the enactments under consideration in *Kalorama Heights* and this case differ.[5] In *Kalorama Heights*, eco-

---

5. In *Kalorama Heights*, at issue was a statutory vagueness challenge to the definition of "special merit" as used in the Historic Landmark and Historic District Protection Act of 1978, D.C.Code §§ 5–1001 *et seq.* The Mayor's agent had denied a developer a demolition permit because, among other reasons, it was not necessary in the public interest to allow the construction of a project of special merit, a standard set by statute. *Id.* at 869 (citing D.C.Code § 5–1002(10)). The developer challenged specifically the portion of the definition of "special merit" which defined it to mean "having significant benefits to the District of Columbia … or having a high priority for community services." *Id.* (citing D.C.Code § 5–1002(11)). We held that the challenged provision was not without standards, given the purposes of the Act, its context and judicial decisions clarifying its meaning. *Id.* at 874.

nomic regulation by statute was the subject of a vagueness challenge. In *LCP,* we pointed out that

> economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.

*LCP, supra,* 499 A.2d at 901 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). In this case, we address whether the statute under which Mitchell was charged makes certain conduct a criminal offense. A statute must define the scope of the conduct which is prohibited. *See J.A., supra,* 601 A.2d at 73 (citations omitted). While an administrative agency has wide discretion when implementing legislation pursuant to statute, "it may decide to penalize specific kinds of conduct only when Congress expressly delegated that power to the agency." *Groves v. Modified Retirement Plan,* 803 F.2d 109, 117 (3d Cir.1986) (citation omitted).

In *Groves,* the Third Circuit rejected the argument that statutory authorization for the imposition of sanctions for violations of a subchapter of the statute could be read to include the regulations promulgated pursuant thereto. *Id.* It concluded that this argument was rejected long ago by the Supreme Court in *United States v. Eaton,* 144 U.S. 677, 12 S.Ct. 764, 36 L.Ed. 591 (1892). *Id.* In *Eaton,* the Supreme Court held that a regulation made by the Commission of Internal Revenue, with the approval of the Secretary of the Treasury, could not be a criminal offense punishable under the statute. 144 U.S. at 688, 12 S.Ct. 764. The Court explained that while such acts

> may be prescribed by law ... and may thus have ... the force of law[,] ... it does not follow that a thing required by them is a thing so required by law as to make the neglect to do the thing a criminal offence in a citizen, where a statute does not distinctly make the neglect in question a criminal offence.

*Id.* In contrast, where rules and regulations are promulgated pursuant to a statute which provide that a violation of such rules or regulations shall be a criminal offense under the statute, it is the statute itself which imposes the penalty, and punishment thereunder is authorized. *See United States v. Grimaud,* 220 U.S. 506, 522–23, 31 S.Ct. 480, 55 L.Ed. 563 (1911). In this case, the statute does not provide that violations of the rules and regulations of the Board will be criminal offenses under the statute. Therefore, the Board's regulations can not be used to expand the conduct made criminal under the statute.

The information stated, and the trial court instructed the jury, that Mitchell was charged with "willfully submitt[ing] a nominating petition that contained signatures that were not written by the persons who[se] signature they purported to be." The court included in its instructions reference to the regulation which required that a signature on the petition be made only by the person whose signature it purports to be. The trial court plainly erred in including this element which was not made a crime by statute.

### III.

 We have upheld a conviction where the information contained no more than a miscitation of the statute allegedly violated where the defendant could show no prejudice. *See Byrd, supra,* 579 A.2d at 728 (where there is no more than a miscitation to a statute, reversal is required only if defendant is prejudiced).[6]

---

**6.** In *Byrd,* "the information charged appellant with illegal possession of drug paraphernalia that could be administered subcutaneously, under [D.C.Code] § 33–550, while the government proved that appellant possessed a pipe used to ingest drugs into the body, an offense under § 33–603(a)." Since a variance between allegation and proof is not fatal unless a defendant is deprived of an adequate oppor-

The District has not argued that the statutory provisions referenced in the charging document were no more than a miscitation and that Mitchell's conduct was proscribed by another statutory provision, as in *Byrd*. Nevertheless, we consider the possibility only as it affects our application of the plain error standard. Mitchell concedes that he could have been charged, but was not, for false statements. *See* D.C.Code § 22–2514 (1996).[7] Indeed, the affidavit which Mitchell signed specifies that he should read the affidavit and make sure that the statements he affirmed were true, or he could be charged under § 22–2514.[8] The offense of false statements is an entirely different offense from the violation with which Mitchell was charged. The instructions given to the jury did not cover all the elements of false statements.[9] Therefore, the jury did not consider whether each element of this offense had been proven beyond a reasonable doubt. Moreover, the trial court stated explicitly that the offense of false statements was not before the court, and defense counsel withdrew a requested instruction as a result. These circumstances give rise to the type of prejudice which amounts to plain error. *See Byrd,* 579 A.2d at 727–28; *Spade, supra,* 277 A.2d at 656.

For the foregoing reasons, the judgment appealed from hereby is reversed and remanded to the trial court with instructions to vacate Mitchell's conviction.

*Reversed and remanded.*

STEADMAN, Associate Judge, dissenting.

The conduct for which appellant was convicted here was "wilfully"submitting as a "circulator" a nominating petition where one person had signed the names of twenty purported registered voters. D.C.Code § 1–1312(j)(1), with whose violation appellant was charged by information, permits a candidate to be nominated only by a petition "signed" by the requisite number of "duly registered voters." D.C.Code § 1–1312(b)(3) states that any circulator who "wilfully violates *any* provision of this *section*" shall be guilty of a criminal offense. Contrary to the suggestion of the majority, I do not think that the penalty provision of § 1–1312(b)(3) is limited only to violations of subsection (b); the plain language on its face encompasses all the provisions of Section 1–1312. While I agree that regulations alone cannot make criminal that which is not made so by statute, it seems to me perfectly reasonable to read the statute as criminalizing a circulator who wilfully submits a petition in violation of the requirements of § 1–1312(j)(1). I do not understand appellant to argue that the challenged signatures may in fact have

---

tunity to prepare a defense and exposed to the risk of being prosecuted for the same two offenses, we held that appellant had failed to demonstrate the requisite prejudice for reversal. 579 A.2d at 727 (footnote omitted).

7. D.C.Code § 22–2514(a) provides that

A person commits the offense of making false statements if that person wilfully makes a false statement that is in fact material, in writing, directly or indirectly, to any instrumentality of the District of Columbia government, under circumstances in which the statement could reasonably be expected to be relied upon as true; provided, that the writing indicates that the making of a false statement is punishable by criminal penalties.

8. Mitchell averred that he was a duly registered qualified voter, had personally circulat-

ed the petition and witnessed the signing of each signature, and determined from each signer that he or she is a registered voter.

9. The essential elements of the offense of false statements are:

1. That defendant made a false statement in writing;
2. That s/he made the false statement, directly or indirectly, to an instrumentality of the District of Columbia;
3. That s/he knew or believed that the statement was false;
4. That the writing indicated that making a false statement was punishable by criminal penalties; and
5. That the statement was material.

CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.86 (4th ed.1993).

been authorized by the relevant registered voters.[1] I simply could not hold that "plain error" infected appellant's conviction here.

---

1. Thus, I do not think the trial court's reference to the Board's regulation with respect to personal signatures is significant in the context of this trial. Appellant's defense was based on quite a different scenario, as the majority opinion indicates.