**Elsie M. CARR, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 85–1613.

District of Columbia Court of Appeals.

Argued Oct. 3, 1990.
Decided Jan. 11, 1991.

William G. Dansie, appointed by this court, for appellant.

Patrice I. Kopistansky, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Helen M. Bollwerk, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Appellant was convicted in a misdemeanor jury trial of unnecessarily failing to provide her dog, named Kim, with proper food and drink, in violation of D.C.Code § 22–801 (1989), and received one year of supervised probation and 100 hours of community service. On appeal, she asserts as a due process violation that the offense of which she was convicted was not properly charged in the information. She further claims that reversible error occurred in the admission of hearsay testimony by a Humane Society officer as to an out-of-court statement concerning the dog's condition made by the examining veterinarian, who ultimately herself took the stand at the trial as a witness. Finding neither of these grounds nor any of a number of others also raised by appellant sufficient to warrant a new trial, we affirm the conviction.

---

I

Brenda Purvis, an officer with the Washington Humane Society, observed a Doberman pinscher dog in the yard of appellant's home in an extremely emaciated condition, exposed to the cold and wind in twenty-degree temperature. After some discussion with appellant in her home, Purvis transported the dog to Dr. Diane Ferris, a veterinarian, for examination and treatment. The dog recovered and was placed in a foster home.

The information charged appellant with an offense under D.C.Code § 22–801,[1] which reads in its entirety as follows:

> Whoever overdrives, overloads, drives when overloaded, overworks, tortures, torments, *deprives of necessary sustenance*, cruelly beats, mutilates, *or cruelly kills*, or causes or procures to be so overdriven, overloaded, driven when overloaded, overworked, tortured, tormented, deprived of necessary sustenance, cruelly beaten, mutilated, *or cruelly killed any animal*, and whoever, *having the charge or custody of any animal, either as owner or otherwise*, inflicts unnecessary cruelty upon the same, or *unnecessarily fails to provide the same with proper food, drink*, shelter, or protection from the weather, shall for every such offense be punished by imprisonment in jail not exceeding 1 year, or by fine not exceeding $250, or by both such fine and imprisonment.

(Emphasis added.)

The information was a printed form, which provided two separate blocks for charging offenses under that section. The block that was checked in appellant's case read: "CRUELTY TO ANIMALS—in that he cruelly beat, tortured, tormented, killed and deprived of necessary sustenance a dog, in violation of Section 22–801, District of Columbia Code." The block immediately following, which was not checked, read: "CRUELTY TO ANIMALS—in that, having the charge and custody of _____, he inflicted unnecessary cruelty upon it and

---

**1.** For a history of cruelty to animals legislation and a discussion of our particular statute and the scant case law thereunder, see generally *Regalado v. United States*, 572 A.2d 416 (D.C. 1990).

unnecessarily failed to provide it with proper food, drink, shelter and protection from the weather, in violation of Section 22–801, District of Columbia Code."

Appellant argues, in essence, that section 22–801 proscribes two distinct offenses, one defined in the first phrase beginning with "whoever" and continuing until the word "and" in the middle of the section ("offense A"), and the second defined in the phrase beginning with the second "whoever" immediately following the "and" ("offense B"). Her argument is that she was charged in the information with committing offense A but tried and convicted of committing offense B, and was thus "deprived of notice and due process of law."

Appellant is perfectly correct in observing that the block in the information that was checked in her case relates solely to offense A. It is equally true that from the very beginning of the prosecutor's opening statement, it was clear that the government was proceeding under offense B, either in addition to or in lieu of offense A. The prosecutor in the third paragraph of her opening statement proceeded to set forth the elements of the offense she was going to prove; included in that recitation were the requirements that the government show that appellant "had charge or custody of the dog in question," and "failed unnecessarily to provide the dog with food, drink, or deprived the dog of necessary sustenance." Only in an offense B prosecution is it relevant whether the defendant had "charge or custody of the dog in question," and the phrase "failed unnecessarily to provide the dog with food [or] drink" is language from the statute relating to offense B. The wrongdoing addressed throughout the trial focused on the lack of food and drink. Likewise, in its instructions, the trial court stated that the charge in the information was that "having the charge and custody of Kim, a dog, [the defendant] unnecessarily failed to provide Kim with proper food and drink." And in its charge to the jury, the trial court stated

that "the essential elements of this offense, each of which the government must prove beyond a reasonable doubt, are two. Number one, that the defendant had charge or custody of the dog, Kim; second, that the defendant unnecessarily failed to provide the dog, Kim, with proper food or drink or deprived the dog of necessary sustenance."

We agree with the trial court's statement, in its order denying the appellant's motion for judgment of acquittal, that "it cannot reasonably be argued that there is any significant difference that could have affected the jury's verdict between unnecessarily failing to provide food or drink and depriving the animal of necessary sustenance" and that "the facts necessary to prove deprivation of necessary sustenance are precisely the same ones needed to prove unnecessary failure to provide proper food or drink." In the circumstances of this case, it cannot be said that the appellant lacked notice of the charge against her or could have faced further prosecution without violation of the double jeopardy clause.[2]

We think the case before us is controlled by *Byrd v. United States*, 579 A.2d 725 (D.C.1990). In that case, the appellant was charged by information with possession of drug paraphernalia consisting of a pipe, in violation of D.C.Code § 33–550 (1981). That section only related to the possession of drug paraphernalia used to administer drugs through subcutaneous injection. However, the instructions given by the trial court also covered all the elements necessary to convict under D.C.Code § 33–603(a), which more generally made illegal the possession of drug paraphernalia with intent to introduce into the human body a controlled substance. We said: "Where there has been, as here, no more than a miscitation of a statute, reversal of a conviction is required only if the defendant is prejudiced." *Byrd, supra,* 579 A.2d at 728. Finding no evidence that the appellant was harmed by the variance, we affirmed the conviction under the proper stat-

2. Appellant's argument about charge A and charge B, and the trial judge's resolution, suggest the desirability of modifying the form to clarify the charges. However, we recognize that this is a matter for the prosecutor's office to address.

ute. We agree with the trial court here that, likewise, "it cannot be said that the defendant has suffered any prejudice, let alone prejudice that would entitle her to a judgment of acquittal after the jury's verdict."

We have not overlooked appellant's baseless argument that to prove a violation, it was necessary to show, as charged in the information, that the appellant "cruelly beat, tortured, tormented, killed *and* deprived of necessary sustenance" her dog. It is well-settled that the elements of a charge in an information may be set forth in the conjunctive yet proven in the disjunctive, if that is the extent of the statutory requirement. *See, e.g., Marcus v. United States,* 476 A.2d 1134, 1137 (D.C.1984) (the "suggestion that an amendment occurred ... ignores the established principle that when the statute sets forth various elements of the offense in the disjunctive, and the indictment nevertheless lists them conjunctively, it is not error for the trial court to instruct the jury that the government need only prove one of the disjunctive elements") (citing cases in accord). Thus, the government was not required to prove any more than the elements required by the statute, which in this case are set out disjunctively and merely require proof of one means of violating the section. Contrary to appellant's apparent belief, her conviction is not a determination that she "cruelly beat, tortured, tormented, [or] killed" her dog.

## II

■ We turn to the hearsay issue. The government presented, in order, three witnesses: Ms. Purvis, Dr. Ferris, and Terry Littlejohn, another Humane Society officer who was present when the dog was taken into custody. Ms. Purvis testified about taking the dog to Dr. Ferris, and this dialogue then ensued:

[Prosecutor]: And did she indicate to you anything about the severity or the condition of the dog with respect to malnutrition and dehydration?

[Appellant's counsel]: Objection, we will hear this from the expert herself.

[Prosecutor]: Your Honor, the witness can testify as to what she knows.

[Appellant's counsel]: The question was what she said, what the expert said to her. The expert will be here. We might as well—it's hearsay otherwise anyway.

The Court: I'll overrule the objection.

[Ms. Purvis]: Dr. Ferris felt that the— that the dog was in extremely poor condition, that she had been deprived of food and water for a very long time, and she felt that this was one of the worst starvation cases that she had seen.

Appellant challenges the admission of Ms. Purvis's statement both as a violation of her Confrontation Clause rights and, in any event, as constituting inadmissible hearsay.

Plainly, there was no Confrontation Clause violation here. No infringement of a defendant's rights under that constitutional provision occurs "by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). This is true even where the declarant has no present recollection of the events involved in the prior statement. Only an "opportunity" for effective cross-examination is required; "successful cross-examination is not the constitutional guarantee." *United States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988) (evidence of an out-of-court identification by an assault victim admissible even where post-assault amnesia made it impossible for defense counsel to cross-examine the victim about the prior identification). The Court in *Owens* further noted:

Our constitutional analysis is not altered by the fact that the testimony here involved an out-of-court identification that would traditionally be categorized as hearsay. See Advisory Committee's Notes on Fed.Rule Evid. 801(d)(1)(C), 28 U.S.C.App., p. 717. This Court has recognized a partial (and somewhat indeterminate) overlap between the requirements of the traditional hearsay rule and the Confrontation Clause. *See Green,*

[*supra,* ] 399 U.S. at 155–156 [90 S.Ct. at 1933–1934]; *id.* at 173 [90 S. Ct. at 1943] (Harlan, J., concurring) ... We do not think ... an inquiry [for indicia of reliability or guarantees of trustworthiness] is called for when a hearsay declarant is present at trial and subject to unrestricted cross-examination. In that situation, as the Court recognized in *Green,* the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness's demeanor satisfy the constitutional requirements. 484 U.S. at 560, 108 S.Ct. at 843. If anything, an identification is likely to be even more "suggestive" and indicative of "special dangers," *Owens, supra,* 484 U.S. at 561, 108 S.Ct. at 843, and thus to require greater safeguards, than a merely descriptive statement. Thus, there could be no question of a Confrontation Clause violation in the situation presented by the case before us.

■ Appellant's argument about the statement's hearsay nature has more merit. The statement was "being offered as an assertion to show the truth of the matters asserted therein." *Jenkins v. United States,* 415 A.2d 545, 547 (D.C.1980) (quoting McCormick, Evidence, § 246, at 584 (2d ed. 1972)). Furthermore, although appellant does not squarely characterize it as such, we deal here with a prior consistent statement of a witness, not admissible under any of the exceptions to the normally required exclusion of such statements. *See Sherrod v. United States,* 478 A.2d 644, 660 (D.C.1984).[3] In *Sherrod,* a case we think illustrative here, a detective testified as to statements made to him by the victim about a drug sale and related attacks. The statements were made some two days after these events had occurred. The victim also had testified at trial. We said:

> The government offers no justification which would render the testimony recounting [the victim's] story admissible and we can find none. However, the declarant ... was available for cross-examination and had in fact been cross-examined, and the detective's testimony was brief and 'substantially comported with the declarant's testimony at trial' ... [W]e hold that the error in admitting the detective's testimony concerning [the victim's] prior consistent statements ... was not plain error.

*Id.* at 660–61 (citation omitted). We likewise conclude that even though the testimony here was inadmissible, the error was harmless.[4] Dr. Ferris's own testimony was unimpeached and clearly indicated the extreme adverse condition of the dog: "This dog was near collapse when she was presented to me. I think any adverse conditions for even 24 hours could have killed her." She testified that the dog was "emaciated" and "dehydrated," weighing little more than half her estimated normal weight. Indeed, Dr. Ferris flatly diagnosed the dog as suffering from "starvation". Furthermore, appellant had ample opportunity on cross-examination of Dr. Ferris to explore any inaccuracies in the prior statement as testified to by Ms. Purvis.

III

Appellant's other arguments are equally unavailing.

**3.** The traditional view that such statements constitute hearsay, even though the declarant is available for cross-examination, "has increasingly come under attack in recent years on both logical and practical grounds." McCormick, Evidence § 251, at 744 (3d ed. 1984). In *Harley v. United States,* 471 A.2d 1013, 1016 (D.C.1984), we noted that "[t]he rationale behind the exclusion of hearsay evidence is that the testimony is inherently unreliable because the declarant is unavailable for cross-examination and cannot be observed by the trier of fact, but that logic is inapplicable where the individual who actually made the identification testifies at trial and can be cross-examined." Nonetheless, it is clear that we have retained the traditional rule with respect to prior consistent statements, whose exclusionary rationale is also based on the proposition that "mere repetition does not imply veracity." *Sherrod,* 478 A.2d at 660 (quoting *Coltrane v. United States,* 135 U.S.App.D.C. 295, 304, 418 F.2d 1131, 1140 (1969)).

**4.** In *Sherrod,* the defendant had failed to object to the testimony and thus the court could review under the plain error standard. Here, appellant objected, and we apply a harmless error standard. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

■ First, the trial court did not err in refusing to suppress several inculpatory statements made without *Miranda* warnings by appellant to Humane Society officers after she invited them into her living room to discuss who they were and what they were doing with the dog. This was not "custodial interrogation." *See Beckwith v. United States*, 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1976) (statements held admissible where made absent *Miranda* warnings by a taxpayer to IRS agents during a discussion in the taxpayer's dining room because he voluntarily invited the agents in and was never arrested or held against his will).

■ Second, there was no error in the trial court's admission of the government's "before and after" photographs of the dog. Defense counsel objected at trial to the admission of the photographs on the ground that no pre-trial discovery was provided despite the fact that the government had agreed under Super.Ct.Crim.R. 16 to provide them before trial if they became available then. This court's standard of review on the issue of sanctions for failure to comply with discovery is abuse of discretion. *Wiggins v. United States*, 521 A.2d 1146 (D.C.1987). The trial court, "in considering the imposition of sanctions, ... must consider a number of factors, including the reason for nondisclosure, the impact of nondisclosure, and the impact of the proposed sanction on the administration of justice." *Id.* at 1148; *(Donald) Lee v. United States*, 385 A.2d 159, 163 (D.C. 1978).

The trial court here engaged in an extensive colloquy about possible prejudice. In response to the principal contention that defense counsel would have arranged for his own photographs, the court noted that counsel had knowledge of the existence of such photographs since the time of the discovery conference and that counsel "had opportunities to take photographs of the animal or move the Court specifically for such opportunity." [5] The court noted also that any questions as to the authenticity or accuracy of the photographs could be dealt with on cross-examination. We perceive no abuse of discretion in the refusal to declare the photographs inadmissible as a Rule 16 sanction against the government.

■ Third, the trial court permissibly excluded photographs depicting two children with puppies from the dog's litter, and appellant holding a puppy, as irrelevant to appellant's case. "An evidentiary ruling by a trial judge on the relevancy of a particular item is a 'highly discretionary decision' that will be upset on appeal only upon a showing of 'grave abuse.' " *Roundtree v. United States*, 581 A.2d 315, 328 (D.C.1990) (citation omitted). Moreover, the court has a duty to exclude confusing and distracting evidence on collateral issues. *See Smith v. Executive Club, Ltd.*, 458 A.2d 32, 41 (D.C.1983).

Finally, we find no reversible error in appellant's remaining three claims which were not asserted at trial; *viz.*, (1) requiring appellant to turn over *Lewis* information,[6] (2) admitting testimony about the condition of another dog in the Carr household, assertedly in violation of *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964), or (3) restricting on relevancy grounds appellant's attempt to cross-examine the Humane Society officers on matters now asserted to show bias. None of these actions, assuming error, was so "clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc).

---

5. Appellant complains that a motion to compel visitation was never ruled upon by the trial court. However, as the trial court pointed out, that motion was "devoid of any clue" that the purpose of the visitation was to take photographs nor was any action sought on the motion before trial. *See Thorne v. United States*, 582 A.2d 964, 965 (D.C.1990) ("A party who neglects to seek a ruling on his motion fails to preserve the issue for appeal.").

6. The trial court required appellant to provide to the government the name, date of birth, and social security number of a potential witness, data which are ordinarily required of the prosecutor by *Lewis v. United States*, 393 A.2d 109 (1978), *on reh'g*, 408 A.2d 303 (D.C.1979). We need not and do not decide whether the trial judge erred in applying *Lewis* to the defense.

Accordingly, the judgment appealed from must be

*Affirmed.*