### In re ESTATE OF Joseph B. GREENE, Appellant.

District of Columbia Court of Appeals.

Argued Dec. 10, 2003.

Decided May 27, 2004.

Robert Bunn, Washington, DC, for appellant.

Dalton Howard, with whom Calvin Brooks was on the brief, for appellee.

Before WAGNER, Chief Judge, STEADMAN, Associate Judge, and FERREN, Senior Judge.

FERREN, Senior Judge:

This is an appeal by the ward, Joseph Greene, from the final accounting by the successor guardian of the ward's estate, Calvin Brooks. After the death of the ward's mother, his adoptive mother was appointed guardian of his estate. At a hearing on April 10, 1997, his adoptive mother was removed as guardian after complications following an automobile accident, and on June 25, 1997, the appellee, Calvin Brooks, was appointed successor guardian. The ward's adoptive mother sought reconsideration of Brooks's appointment and asked the trial court's permission for her to continue as guardian. The court denied her requests, stating that "the removed guardian has had an extensive history of delinquency in this matter," and that "other irregularities exist regard-

ing the omittance of assets that should have been received from the estate of the minor's mother and the payment of funds by the removed guardian to herself which have not been explained."

On September 23, 1998, the ward filed a complaint to remove the successor guardian and to have the removed former guardian, his adoptive mother, reinstated as guardian of his estate. The complaint also challenged the successor guardian's payment of federal taxes from the estate, as well as his taking of commissions from the estate without prior court approval. We agree with the ward on this last issue and conclude that the trial court must approve every commission *before* a guardian may take a fee from a ward's estate.

## I.

Appellant contends, first, that the successor guardian had not been properly appointed because appellant—as a minor over age fourteen at the time—had a statutory right to be present in court for the appointment and was not. D.C.Code § 21–108(a) (2001). He maintains, second, that the trial court erred in refusing to honor his statutory right, as a ward over age fourteen, to "select a new guardian." D.C.Code § 21–108(b) (2001). As elaborated below, these contentions were not raised in the trial court, and thus, are reviewable only for a "clear miscarriage of justice apparent from the record." *Williams v. Gerstenfeld,* 514 A.2d 1172, 1177 (D.C.1986) (citations omitted). We find none here.

■ On September 23, 1998, the ward filed in the trial court a "Verified Complaint to Remove Successor Guardian of a Minor's Estate." Thereafter, the trial court held a hearing—which it characterized as "a non-jury trial on the Complaint"—then issued an order on April 30, 1999 limited to approving disbursements

and compensation. The court noted, however, "an irregularity" in the removed guardian's administration of the ward's estate and confirmed the successor guardian's "correct performance of his duty." The court deferred consideration of "contested issues regarding the Accounts and the Complaint" to a later hearing held on May 21, 1999, which the court eventually characterized as a "continuation of the hearing on the Complaint for Removal and the Objections to the First Account of Brooks, and the Request [of Brooks] for Compensation." At that hearing, however, and thereafter—perhaps because of the court's references to irregularities in the removed guardian's administration, in contrast with the court's approval of the successor guardian's actions—the ward never pressed the trial court for a ruling on his complaint for removal and, as a result, has failed to preserve the removal issue for appeal. *See Carr v. United States,* 585 A.2d 158, 163 n. 5 (D.C.1991); *Thorne v. United States,* 582 A.2d 964, 965 (D.C. 1990).

In his Complaint for Removal, moreover, the ward did not mention D.C.Code §§ 21–108(a) and (b). Nor did the ward's supplementary trial court pleadings address them. To the contrary, in the trial court the ward directed his Complaint for Removal solely to the judge's discretion; he did not seek removal based on statutory right. For these additional reasons, therefore, the ward did not preserve for appeal the § 21–108 issues he asks us to review.

## II.

Raising a third issue, the ward contends that the trial court erred in approving the guardian's request to pay a federal tax deficiency of $29,136 owed by the ward. Sometime in July 2001, the guardian received an IRS notice of deficiency for 1999 taxes. On November 15, he filed a peti-

tion for an expedited hearing, informing the court that the deficiency had been caused by the failure of the ward's mother (the prior, "removed" guardian) to disclose an additional $87,722 that should have been included in the ward's income. The guardian further informed the court that he had "been attempting to convene a meeting" with mother and son, without success; that the IRS had assessed a $4,323 penalty that he was trying to get waived; and that the IRS letter gave a January 17, 2002 deadline for filing a petition with the U.S. Tax Court to challenge the deficiency. The trial court *sua sponte* issued an order five days later authorizing the guardian to pay the deficiency and ordering the mother to appear in court on December 11 to show cause why judgment should not be entered against her for the value of any tax deficiency and lost assets.

Ten days after that, on November 30, counsel for the ward moved for reconsideration and a stay of the court's order on the ground that the ward appeared to have additional deductions for 1999 and that amended returns should be filed to reflect items that might reduce the deficiency. The guardian filed an opposition on December 6, informing the court that he had "put in action payment of taxes and interest," and that "a request to waive penalty" was "still pending." On December 10, counsel for the ward sought a continuance of the hearing set for the next day, noting that the ward could not be present because of college exams, alleging that the 1999 tax return had been "filed after February 22, 2000 when [the ward] turned 18 years old," and questioning the guardian's authority "to prepare and submit the tax return." The trial court went ahead with the hearing and, on December 11, reconfirmed the guardian's permission to make the tax payment, without reference to the allegation that because the ward had reached his

majority the guardian had lacked power to act. Counsel for the ward again sought reconsideration, this time arguing against a lump sum deficiency payment because the ward had negotiated an installment plan for paying his tax debt that would ease the burden on his assets. The only relief requested was a court order requiring the guardian to "retrieve the $29,136.00 check from the Internal Revenue Service."

In his opposition, the guardian reconfirmed that the deficiency had been paid. On January 18, 2002, in reviewing the tax issue, the trial court faulted the ward's mother for the deficiency and suggested that the ward could challenge the assessment "through the normal IRS procedures for seeking to file one or more amended returns." Later, in the order approving the guardian's final accounting—which is the final order on appeal—the trial court called the deficiency issue "frivolous," concluding:

> The successor [guardian] had a duty to conclude tax issues to the greatest extent possible, while he still had control of the assets. One of the reasons why the Court directed him to address such issues was to insure that there would be no basis for any action against him for failing to minimize the Ward's liability when [the guardian] had the opportunity to do so.

On appeal, the ward relies principally on the argument—mentioned once in passing in a motion for a continuance and never presented to the trial court for disposition—that because the ward had reached majority before the deficiency issue arose, the court lacked jurisdiction to order, and the guardian had no power to implement, the payment of the $29,136 federal tax deficiency. He thus is contending that the guardianship of an estate expires automatically upon the ward's attaining majority and, as a consequence, is questioning the court's authority, even in approving the windup of a guardianship, to permit any transaction by the guardian during the period after a ward turns eighteen (unless, presumably, the ward consents).

The statute that governs the final accounting by a guardian of the estate provides: "On arrival of a ward at the age of 18 years the guardian shall exhibit a final account of his trust to the court and shall, agreeably to the court's order, deliver up to the ward all the property of the ward in his hands," failing which "his [or her] bond may be sued upon ..., and he [or she] may be attached." D.C.Code § 21–158 (D.C.2001).[1] The court accordingly has a period after the ward attains majority to consider and approve the guardian's final accounting.

For several reasons, we need not consider the extent of the guardian's authority, if any, to use estate property for the ward's benefit during the windup period, with court permission, after the ward reaches age eighteen. First, the ward unquestionably owed back taxes for the period during his guardianship, subject to accruing penalties and interest. Second, the trial court found—and we have no basis for discrediting the finding—that the ward's mother withheld financial information that caused the guardian to file an inaccurate 1999 return. The guardian has no fault here. Third, the guardian acted pursuant to court order; he was not on a frolic. And any question of the court's jurisdiction to approve the guardian's payment of the 1999 deficiency should not make the

---

1. Compare the statute governing termination of guardianship of the person, D.C.Code § 21–104 (2001): "A natural guardianship or an appointive guardianship of the person of an infant ceases when said infant becomes 18 years of age or marries."

guardian, who acted in good faith, vulnerable to personal exposure for a possible trial court error that he had no reason to question or authority to defy. Fourth, as the trial court noted, the ward is in as good a position as anyone to seek a refund, based on more recently alleged deductions (previously undisclosed to the guardian).

Fifth—and essentially of conclusive significance here—as to any harm from the lump sum payment in lieu of the ward's negotiated installment payments to the IRS (previously undisclosed to the guardian), the only relief sought at trial and on appeal is a court-ordered effort by the guardian to retrieve the lump-sum check paid to the IRS. The ward is not seeking any payment from the guardian himself representing the difference between the lump-sum payment and the present, discounted value of the deficiency paid over time. Thus, if there is technical injury from the lump-sum over the installment payment, the ward himself is in a far better position to negotiate with the IRS about this, for only he has all the facts necessary to prove the installment arrangement. Finally, the ward's representation that an amended return will be required for 1999, resulting in a lower federal tax payment, gives additional reason for concluding that all negotiations with the IRS are better handled by the emancipated ward himself, rather than divided between the ward and a guardian whose job otherwise is done. In sum, whatever trial court error can be imagined from the fact that the guardian paid a federal tax deficiency from the ward's estate upon preparing the return and receiving notice of the deficiency after the ward had attained the age of majority, the remedy sought is inconsequential, impractical, and—all things considered—inequitable. We decline the invitation to overrule the trial court here.

### III.

■ We now turn to the final issue, indeed an issue of considerable importance in the proper administration of every guardianship. The ward faults the successor guardian for taking from the estate two five percent commissions before court approval. We agree with the ward.

D.C.Code § 21–143 (2001) provides in relevant part:

> A guardian ... shall be allowed credit for taxes, repairs, improvements, expenses, and commissions.... The court shall allow a reasonable compensation for services rendered by the guardian not exceeding a commission of five per centum of the amounts collected, if and when disbursed.

We try always to discern the intent of the legislature from the language of the statute, looking first for its "plain" meaning. *Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc). Nothing is plain here, however; the statute is ambiguous as to whether commissions can be taken without prior court approval. Nor is the legislative history helpful.[2]

The Superior Court probate rules that implement the statute, however, strongly imply that prior approval is required. Super. Ct. Prob. R. 225(b), applicable here, provides:

> *A claim for commission for ordinary services may only be made in an annu-*

---

**2.** *Compare* House Comm. on the Judiciary, Revision of Part III, District of Columbia Code Entitled "Decedents' Estates and Fiduciary Relations," H.R.Rep. No. 89–235 (1965) *with* Act of March 3, 1901, Ch. 854, § 1135, 31 Stat. 1370 (codified in D.C.Code § 21–126 (1901)).

*al account* and, except as otherwise provided in these rules, no statement of services is required. The amount or percentage of commission claimed need only be reflected in the account itself. [Emphasis added.] [3]

Similarly, subsection (c) of Rule 225, applicable to "extraordinary services" (not at issue here), states:

> At the time of filing an annual account or at any other time upon the showing of good cause, a conservator or guardian may *petition the Court* for compensation for extraordinary services rendered.... [definition of extraordinary expenses and details required for the petition follow]. [Emphasis added.] [4]

Furthermore, it is interesting to note that the official local practice handbook treats a guardian's commission as a "proposed disbursement," not merely as a disbursement, in the guardian's annual accounting. District of Columbia Superior Court, Probate Division, Probate Training Seminar, Vol. III, *Guardianship of Minors,* § XI (F), at 6 (Oct. 2002).

While court rules, let alone a court training manual, cannot change the meaning of a statute, they do reflect a significant, informed opinion as to what the statute means. And by using the words "claim" and "petition" and "proposed" these official pronouncements strongly suggest a statutory interpretation that any removal of money from a ward's estate to pay a guardianship fee, in mere anticipation of court approval, would be not only speculative but forbidden. Indeed, courts in other jurisdictions, while interpreting similar (though different) fee statutes, have reached the same conclusion. *See, e.g.,*

*McGowan v. Milner,* 195 Ala. 44, 70 So. 175, 178 (1915) (statute provides that "such compensation must be allowed as is just," and guardian has no right to deduct fees until allowed by court).

Our conclusion that D.C.Code § 21–143 requires court approval before a guardian can take a commission from the ward's estate is reinforced by Super. Ct. Civ. R. 305(c):

> All expenditures from an estate by a fiduciary, *except those provided by statute and court costs,* shall be made only upon prior authorization of the Court. Failure of a fiduciary to obtain prior Court authority for expenditures, *other than those provided by statute and court costs,* shall constitute an irregularity in the administration of the estate and such expenditures shall be disallowed as a charge to the estate upon annual accounting except for good cause shown. [Emphasis added.]

We believe that the language italicized above excepts from prior court approval only those expenditures that are (1) calculable automatically, such as court costs and other liquidated amounts expressly "provided" by statute, or are (2) otherwise allowable by statute without any court approval whatsoever (though subject to attack for excessiveness), such as compensation for services under the Probate Reform Act of 1994, D.C. Law 10–241 (codified at D.C.Code § 20–751). To interpret this language more broadly, as though any type of expenditure authorized by statute would be exempt from prior court approval, would be to create a bundle of exceptions so vast that the basic purpose of the rule—to subject a fiduciary's expenditures

---

3. Identical language is found in Super. Ct. Civ. R. 301(d).

4. Super. Ct. Civ. R. 301(f) contains the same language, except for omitting the phrase "or

at any other time upon the showing of good cause." Also, the details required for the petition vary slightly from those in Super. Ct. Prob. R. 225(c).

from an estate to pre-clearance by the court—would be undermined. Perhaps even more than the other court rules we have cited, Super. Ct. Civ. R. 305(c) announces a confident interpretation by the rule makers—with which we agree—that a statute, such as D.C.Code § 21–143 (2001), requires prior court authorization of a guardian's compensation, not merely ratification of compensation drawn by the guardian before going to court.

The trial court took the other view. In approving Brooks's commissions by ratification, the court opined in part:

> Probate Rule 225(a) [sic (b)] specifically authorizes the payment of commissions without the need to file a fee petition, as such. Therefore approval by the court is not involved at all. The Rule does not speak to the detail of whether the disbursement of such commissions literally may not occur until the corresponding Account is approved. Therefore, no requirement is imposed.... The court notes parenthetically that any Guardian of a minor's estate incurs the risk that the disbursements on which the commissions are based might be subject to disallowance by the Court during the Account review process. In that rare situation, the burden of having to redeposit part of any commission is potential. Nonetheless the disbursements without judicial review and approval are not improper or unethical.

We cannot accept this reasoning. In the first place, we cannot be certain that, under the trial court's approach, the "redeposit" of part of a commission taken prior to court approval would be a "rare situation." The statutory 5% commission is a ceiling ("not exceeding") that invites considerable trial court discretion even if 5% were to be considered the norm. Furthermore, even if a guardian could take 5% with predictable assurance that the court would award that percentage, there is always the possibility of adjustments to entries in preparing an annual or final account that, as a result, would lead to changes in the base on which the 5% fee is computed. The adjustments may or may not be small, and as likely to favor the guardian as not. But this real possibility of adjustments, when added to the court's discretion over the percentage to be awarded, cuts very much in favor of a statutory interpretation that favors initial finality of a fee computation, based on an actual accounting, rather than on two-part fee calculations (even if rare, as the trial court suggests they would be).

None of this reasoning, moreover, even touches the policy concern—which does not appear on the facts of this case but may in others—that a guardian's dipping into the estate for fees, prior to court approval, has the potential for mischief. In this connection, an examination of the history of the somewhat comparable provision dealing with probate fees is useful. When District of Columbia law was amended a decade ago to permit a personal representative of a probate estate to take fees without court approval, Probate Reform Act of 1994, D.C. Law 10–241 (codified at D.C.Code § 20–751), the new statute replaced one permitting reasonable compensation "paid upon approval by the Court of a request filed as provided in subsections (c) through (g)." D.C.Code § 20–751 (1981). The earlier provision was understood to require court approval before taking a fee. *See In re Travers,* 764 A.2d 242, 247 (2000); *Godette v. Estate of Cox,* 592 A.2d 1028, 1032 (D.C.1991). Our interpretation of D.C.Code § 21–143 (2001) in the present case is reinforced by these contrasting, analogous provisions governing probate estates, for the language of § 21–143 is closer to that of the old § 20–751 than to the new. For whatever reason, moreover, the Council of the

District of Columbia—in focusing on the manner of awarding commissions to probate fiduciaries—declined to extend the reach of its newly-adopted policy to the guardianship statute. In light of the Council's own forbearance, we shall forbear likewise. If the Council wishes to change the rule we confirm today (requiring court approval before a guardian takes a fee from the ward's estate), it can easily do so.

■ In this case, therefore, both practical administrative problems and policy concerns, especially when taken together, convince us that the legislative purpose—and probably the legislators' actual intentions if they had been recorded—would be undermined by the trial court's interpretation of § 21–143. We conclude, therefore, that as properly understood, D.C.Code § 21–143 forbids a guardian to draw any compensation from a ward's estate for services rendered by the guardian until the court has approved both the right to compensation and a specified amount.

In this case, we are concerned with two entries, dated February 28, 2002, on Schedule H of the Third and Final Accounting. One represents an "ordinary 5% commission" ($3,086.52) and the other a "5% turnover commission" ($6,168.57). The guardian took each from the estate before the court approved (neither required an adjustment). Based on the statutory interpretation we adopt today, therefore, the trial court erred in concluding that prior court authorization is not required for guardianship fee commissions under D.C.Code § 21–143.

That said, we note again the language of Super. Ct. Civ. R. 305(c) requiring disallowance of any non-exempt expenditure (including a commission) if taken without prior court authorization, *"except for good cause shown."* (Emphasis added.) This suggests that the trial court can ratify—if the circumstances are right—a commission erroneously taken before the court has approved it. Because the burden here is on the guardian to show "good cause" and the court must still approve the commission, we are satisfied that the protections inherent in the pre-approval policy of D.C.Code § 21–143 will not be frustrated by the trial court's sound, discretionary application of this exception.

Under the circumstances of this case, we do not question Brooks's right to compensation or the respective amounts the trial court has already approved based on good cause amply demonstrated in the record. There remains, however, the question whether the ward is entitled to interest from Brooks at the statutory rate on each of the two commissions at issue for the period between the date each was taken and the date the court gave its approval, or at least the date the guardian filed his request for approval. *See, e.g., McGowan,* 70 So. at 178 (noting that guardian has no right to compensation until decreed by court, and charging interest from date of disbursement to date of court decree); *see generally* H.D. Warren, Annotation, *Guardian's Liability for Interest on Ward's Funds,* 72 A.L.R.2d 757 (1960).

Even though a guardian may be entitled, with the court's eventual blessing, to a commission taken before the court approved it, there is a strong argument that, as a matter of law, the guardian should be obliged to pay interest for improper use of the money during a period when that money should have remained in the estate earning income for the ward, not for the guardian. On the other hand, in the absence of a statutory provision for interest, we are reluctant to adopt an inflexible rule. There may be circumstances in which the court, in the interest of fairness, should find good cause not only for approving a guardian's commission after it had been

drawn prematurely, but also for waiving interest that normally should be charged against the guardian as a matter of equity.

Accordingly, we reverse and remand for further proceedings in which the trial court, in its sound discretion, shall evaluate whether—and, if so, for what period of time—appellee Brooks should be accountable to the ward's estate for interest, computable at the statutory rate, allocable to estate funds taken to pay himself the two commissions at issue prior to authorization by the court.

*So ordered.*